UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CARL P. BENTLEY** | **CIVIL ACTION NO. 23-0771** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **ALLEN KUPP** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Carl P. Bentley, a prisoner at Richland Parish Detention Center proceeding pro se and in forma pauperis, filed this proceeding on approximately June 8, 2023, under 42 U.S.C. § 1983. He names Warden Allen Kupp as defendant.[1]

For reasons below, the Court should retain Plaintiff's excessive force claim against Warden Kupp. The Court should dismiss Plaintiff's remaining procedural due process claim and his request for a transfer.

### Background

Plaintiff states that on May 10, 2023, Warden Allen Kupp entered "H-dorm" at Richland Parish Detention Center and "told everyone to get to their beds." [doc. # 1, p. 8]. A deputy asked Plaintiff why he was "on [the deputy's] floor," and Plaintiff responded that he was using the urinal. *Id.* Warden Kupp instructed Plaintiff "to go outside[.]" *Id.* Plaintiff claims that "as [he] was going outside[,]" Warden Kupp utilized excessive force, twisting Plaintiff's arm behind his back and attempting to break it, shoving him through a door into a hallway, attempting to trip

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

him numerous times to make him fall, and slamming him "face first into the wall." [doc. #s 1, p. 3; 8, p. 1]. Plaintiff suffered an injured shoulder and bruising to his face. [doc. # 8, p. 1]. He maintains that he "was never threatening or trying to resist[.]" *Id.* He states that he "did not do anything deserving of what [Kupp] did." [doc. # 1, p. 3].

Plaintiff also claims that Kupp placed him "in the hole for a week without a write up." [doc. # 1, p. 3].

Plaintiff seeks a transfer to the facility closest to his home and $2,000,000.00 for his pain and suffering. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

"based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state

a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Excessive Force**

When a prison official is accused of using excessive physical force in contravention of the Eighth Amendment's Cruel and Unusual Punishments Clause, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (*citing Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "Force beyond that reasonably required to maintain or restore discipline is 'wanton and unnecessary.'" *Perez v. Collier*, 2021 WL 4095263, at *2 (5th Cir. Sept. 8, 2021) (*quoting Hudson*, 503 U.S. at 7). "This standard looks to an official's subjective intent to punish." *Id.*

However, not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment does not protect against "*de minimis*"

4

use of physical force, so long as the use of force is not of a sort "repugnant to the conscience of mankind." *Id*. (citation and internal quotation marks omitted). Courts consider the following factors: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

Here, as above, Plaintiff claims that "for no justifiable reason" Warden Allen Kupp twisted his arm behind his back and attempted to break it, shoved him through a door into a hallway, attempted to trip him numerous times to make him fall, and slammed him "face first into the wall." Plaintiff suffered an injured shoulder and bruising to his face. He states that he "did not do anything deserving of what [Kupp] did."

Plaintiff does suggest that, because he needed to use a urinal, he failed to follow an order to return to his bed. [doc. # 8, p. 1]. However, he also states that he "was never threatening or trying to resist[,]" suggests that Kupp used little effort to temper the severity of a forceful response, and plausibly indicates that he suffered a greater-than-de minimis injury. Construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, the Court should retain this claim.

**3. Procedural Due Process**

Plaintiff claims that Kupp placed him "in the hole for a week without a write up." [doc. # 1, p. 3]. Plaintiff, however, does not state a plausible claim because his punishment, as described, did not implicate a protected property or liberty interest.

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Whitley v. Hunt*, 158 F.3d 882,

5

889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (*quoting Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[3]

Here, the Court must examine whether Plaintiff's segregated confinement constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted). "In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the extent to which the conditions of the disciplinary segregation differ from other routine prison

---

[3] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (*cited with approval by Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.* Courts "consider the severity of the restrictive conditions and their duration when deciding whether a prisoner has a liberty interest in his custodial classification." *Carmouche v. Hooper*, 2023 WL 5116377, at *2 (5th Cir. Aug. 10, 2023).

Here, Plaintiff was in "the hole" for approximately seven days. Plaintiff, however, neither describes the conditions in the hole nor explains how the conditions he experienced differed from other routine prison conditions. In this respect, his claim is conclusory. *See Carmouche*, 2023 WL 5116377, at *2 (*quoting Luken*, 71 F.3d at 193) ("[G]enerally, 'administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest.'"); *Wilson v. Dill*, 220 F.3d 586 (5th Cir. 2000) (finding that without more, the plaintiff's allegation that he was placed in lockdown "without being charged with a violation of a disciplinary rule" did not implicate a cognizable liberty interest).

Further, Plaintiff's duration in the hole was not excessive in degree. *See Sandin*, 515 U.S. at 486 (holding that thirty days in disciplinary segregation "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction."); *Jeter v. Phillips*, 166 F.3d 341 (5th Cir. 1998) ("The sanction of twenty days of isolation/disciplinary detention, which lies at the root of the remaining charges, does not reflect the type of atypical, significant deprivation in which a state might create a liberty interest. It reflects only a change in the

condition of confinement."); *Odneal v. Hinojosa*, 357 F. App'x 598, 598-99 (5th Cir. 2009) ("Odneal's punishments of 45 days of recreation restriction, 45 days of commissary restriction, and demotion in time-earning class" did not present atypical and significant deprivations); *Watkins v. Lnu*, 547 F. App'x 409, 410 (5th Cir. 2013) ("The district court did not err in concluding that Watkins's 14 days of disciplinary segregation and three-month loss of commissary, visitation, and telephone privileges did not implicate a liberty interest protected by the Due Process Clause.").

As Plaintiff presents no extraordinary circumstances and alleges no atypical or significant hardships, he does not state a plausible procedural due process claim.[4]

Accordingly, the Court should dismiss this claim.

**4. Transfer**

Plaintiff asks the Court to transfer him to a different facility. A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*,

---

[4] *See Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation were not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. §15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss his request for a transfer.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Carl P. Bentley's procedural due process claim and request for a transfer be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

**(14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 24th day of August, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge